UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

TIANA LASALLE,                                          :
                                                        :
                          Plaintiff,                    :
                                                        :
                   -against-                            :
                                                        :
CITY OF NEW YORK, CITY OF NEW YORK               :
OFFICE OF CHIEF MEDICAL EXAMINER,                :
NEW YORK CITY DEPARTMENT OF HEALTH :            13 Civ. 5109 (PAC)
AND MENTAL HYGIENE, NEW YORK CITY                :
DEPARTMENT OF HEALTH AND MENTAL                  :            **OPINION & ORDER**
HYGIENE OFFICE OF CHIEF MEDICAL                  :
EXAMINERS, ROBERT KEARNEY,                       :
SHEPERIO HAWKINS, ARTHUR AARONSON, :
and THOMAS ORTIZ, in their individual and        :
professional capacities,                         :
                                                 :
                          Defendants.            :
------------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 30, 2015

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Tiana LaSalle, a van driver for the City morgue, sued her employer, Defendants

City of New York, City of New York Office of Chief Medical Examiner, New York City

Department of Health and Mental Hygiene ("DOHMH"), New York City Department of Health

and Mental Hygiene Office of Chief Medical Examiners ("OCME"), and her supervisors,

Defendants Robert Kearney, Sheperio Hawkins, Arthur Aaronson, and Thomas Ortiz.  Ms.

LaSalle's chief complaint is that the Defendants refused her request for a reasonable

accommodation with regard to lifting heavy objects during her pregnancy.  She makes 20 claims

of race, color, gender, and disability discrimination, hostile work environment, and retaliation,

under 5 different statutory regimes: Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. §§ 1981 and 1983, New York State Executive Law § 296 ("NYSHRL"), and New York

City Administrative Code § 8-101 et seq. ("NYCHRL").

Defendants move to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), for failure to exhaust administrative relief under Title VII, and pursuant to 12(b)(6), for failure to state a claim.

For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff, a Hispanic female, has worked at the OCME since January 21, 2002. In June 2007, she was promoted to motor vehicle operator. Am. Compl. ¶¶ 18-20. In 2008, Plaintiff informed Kearney, her supervisor, that she was pregnant, and Kearney ceased assigning her to morgue van. *Id.* ¶ 23.

In June 2009, non-party Wendell Davidson, a technician supervisor, called Plaintiff a "dirty bitch." *Id.* ¶ 24. Kearney, who was also Davidson's supervisor, asked Plaintiff not to report the comment to OCME's Human Resources Department because Keaney "would deal with the situation himself." *Id.* ¶ 25. Plaintiff, however, filed a complaint with the Human Resources Department in mid-June 2009. *Id.* ¶ 26.

Ortiz, another of Plaintiff's supervisors, "habitually spoke to Plaintiff's co-workers about her personal life, including saying 'she's getting a divorce so go for it' and 'anybody can get her ass.'" Ortiz "called Plaintiff a 'bitch' as well as other derogatory and/or sexist names."[1] *Id.* ¶¶ 40-41.

In November 2011, Plaintiff was pregnant again, and provided Hawkins with a doctor's note informing him of the pregnancy. *Id.* ¶ 27. In December 2011, Plaintiff told Hawkins that she could not lift more than 45 pounds due to her pregnancy. She requested that she not be

---

[1] The Complaint does not indicate when these comments occurred.

assigned to the morgue van, because that assignment required her to lift more than 45 pounds. *Id.* ¶¶ 28-29. Plaintiff also informed Kearney that she was unable to "work the morgue van due to her pregnancy." *Id.* ¶ 30. Despite her requests, Kearney and Hawkins "continued to assign Plaintiff to the morgue van approximately two days per week." *Id.*

On January 9, 2012, Plaintiff was assigned to the morgue van, and was injured while transporting a cadaver. *Id.* ¶ 31. Plaintiff went on medical leave the next day, but Defendants "denied [Plaintiff] medical insurance." *Id.* ¶ 32. On April 10, 2012, Plaintiff provided Defendants a doctor's note stating that she could return to work as long as she would not be required to lift more than 25 pounds. Aaronson, however, informed Plaintiff that no "light duty" assignments were available. *Id.* ¶¶ 33-34.

On April 20, 2012, Plaintiff's then-attorney wrote to Defendants and "repeat[ed] [Plaintiff's] request for an accommodation." *Id.* ¶ 35. From April 25, 2012 until May 31, 2012, Defendants "requested more specifics from [Plaintiff's attorney] . . . to explore how they could accommodate her." *Id.* ¶ 36. On June 1, 2012, Plaintiff's attorney "threaten[ed] legal action against Defendants" because Plaintiff still had "not been provided with a reasonable accommodation or medical insurance." *Id.* ¶ 37. On June 4, 2012, Defendants "offered Plaintiff an accommodation." *Id.* ¶ 38. Plaintiff returned to work on June 10, 2012, under the agreement that she would not be required to lift more than 25 pounds, or change tires or wheels, for a six-week period. *Id.* ¶ 39. Plaintiff alleges that she was "unpaid during eight months of her pregnancy." *Id.* ¶ 43.

After returning to work, Plaintiff filed a complaint with the New York City Commission

on Human Rights.[2] *Id.* ¶ 16; Rodriguez Decl., Ex. B.  On April 24, 2013, "Plaintiff received a

Notice of Right to Sue letter from the EEOC."  Am. Compl. ¶ 17.

On May 19, 2013, Plaintiff was in a car accident and suffered a neck injury.  *Id.* ¶ 42.

Plaintiff "provided Defendants with a doctor's note but Human Resources told her that the note

was 'not good enough' and that she had to request an extension." *Id.*

## DISCUSSION

### I.   Legal Standard

#### a.  Motion to Dismiss

To survive a motion to dismiss for failure to state a claim, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  A claim is facially plausible if it contains "factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  At the

motion to dismiss stage, the court "assess[es] the legal feasibility of the complaint," but does not

"assay the weight of the evidence which might be offered in support thereof." *Lopez v. Jet Blue*

*Airways*, 662 F.3d 593, 596 (2d Cir. 2011) (citation omitted).

#### b.  Discrimination Claims

Title VII prohibits employers from discriminating against employees on the basis of their

"race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2.  To state a prima facie claim

for disparate treatment under Title VII, a plaintiff must allege that: (1) she is a member of a

---

[2] Although Plaintiff alleges that she "submitted a dual-filing with the New York State Division of Human Rights and the EEOC," it appears that she actually filed an intake form and verified complaint with the New York City Commission on Human Rights. *See* Am. Compl. ¶ 16; Rodriguez Decl. Ex. A, B.

protected class, (2) she was qualified for the position she held, (3) she suffered an adverse

employment action, and (4) the action occurred under circumstances giving rise to an inference

of discrimination.[3] *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). "[C]ircumstances

that give rise to an inference of discriminatory motive include actions or remarks made by

decisionmakers that could be viewed as reflecting a discriminatory animus," as well as

"preferential treatment given to employees outside the protected class." *Chertkova v. Conn.*

*Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996).

Although a complaint need not allege "specific facts establishing a prima facie case of

discrimination" to survive a motion to dismiss, these elements "provide an outline of what is

necessary to render a plaintiff's employment discrimination claims for relief plausible."

*Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013).

Section 1981, 1983, and NYSHRL actions are analyzed using the same framework as

Title VII claims. *See Martin v. Citibank, N.A.*, 762 F.2d 212, 216-17 (2d Cir. 1985) (§ 1981);

*Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998) (§ 1983); *Aiossa v. Bank of Am.,*

*N.A.*, 538 Fed. Appx. 8, 10 (2d Cir. 2013) (NYSHRL).  NYCHRL claims, on the other hand, are

reviewed "independently from and more liberally than their federal and state counterparts."

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).

---

[3] Under the "burden-shifting" framework for Title VII cases, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Once plaintiff does so, a presumption of discrimination arises.  The burden then shifts to defendants to set forth "some legitimate, non-discriminatory reason" for their actions.  *Id.*  If defendants articulate such a reason, the plaintiff may show that the proffered reason was pretextual.  *Id.*; *Young v. United Parcel Serv., Inc.*, 575 U.S. __ (Mar. 25, 2015).

## II.    Analysis

### A.    Pregnancy-Related Discrimination Claims

#### i.    Pregnancy Discrimination Act (Title VII and NYSHRL)

Title VII, as amended by the Pregnancy Discrimination Act ("PDA"), prohibits "discrimination based on a woman's pregnancy because it is, on its face, discrimination because of her sex."[4]  *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 832 (S.D.N.Y. 2013) (citation omitted).  The PDA requires that "women affected by pregnancy" be treated the same as "other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

The Supreme Court recently dispelled any doubt that a plaintiff may bring a PDA claim based on her employer's failure to accommodate her pregnancy.  *Young v. United Parcel Serv., Inc.*, 575 U.S. __ (Mar. 25, 2015).  The Court also confirmed that, unless there is "direct evidence that a workplace policy, practice or decision relies expressly" on a plaintiff's pregnancy status, such claims should be analyzed using the *McDonnell Douglas* burden-shifting framework. *Id.*  Under the *McDonnell Douglas* framework, a plaintiff asserting "that the denial of an accommodation constituted disparate treatment under the [PDA]," must first make a prima facie case of discrimination.  *Id.*; *McDonnell Douglas Corp.*, 411 U.S. at 802-04.  To do so, the plaintiff must establish "that she belongs to the protected class, that she sought accommodation, that the employer did not accommodate her, and that the employer did accommodate others 'similarly situated in their ability or inability to work.'"[5]  *Young*, 575 U.S. at __.

---

[4] The NYSHRL "provides the same sort of protection regarding pregnancy discrimination as Title VII." *Wilcox v. Cornell Univ.*, 986 F. Supp. 2d 281, 285 (S.D.N.Y. 2013) (citation omitted).

[5] If the plaintiff establishes a prima facie case of discrimination, the employer may "then seek to justify its refusal to accommodate the plaintiff by relying on 'legitimate, non-discriminatory' reasons for denying her accommodation." *Id.*  If the employer is able to do so, the "plaintiff may in turn show that the employer's proffered reasons are in fact pretextual." *Id.*

6

### ii.   Disability Claims (NYSHRL and NYCHRL)

Under the NYSHRL, an employer may not discriminate against an employee "in [the] terms, conditions or privileges of employment" because of a disability.  N.Y. Exec. Law § 296(a).  A "failure to accommodate claim" under the NYSHRL "requires a plaintiff to show that: (1) she was disabled within the meaning of the statute; (2) the employer had notice of her disability; (3) she was able to perform the essential functions of her job with a reasonable accommodation; and (4) the employer refused to make such an accommodation." *Jackson v. Battaglia*, 2014 U.S. Dist. LEXIS 167167, at *18 (N.D.N.Y. Dec. 3, 2014).

The NYCHRL requires that a "disabled individual [] have the requisite job qualifications as well as be able to satisfactorily perform in the job."  9 NYCRR § 466.11(d)(1).  "Satisfactory performance" is the "minimum acceptable performance of the essential functions of the job as established by the employer."  9 NYCRR § 466.11(f)(2).  To prevail in a disability discrimination claim under NYCHRL, a plaintiff "must show that [s]he has been treated less well at least in part *because of*" her disability.  *Mathew v. N. Shore-Long Island Jewish Health Sys.*, 582 Fed. Appx. 70, 71 (2d Cir. 2014) (citation omitted).

### iii.   Application

Plaintiff has sufficiently alleged pregnancy and disability discrimination claims under the PDA, the NYSHRL, and the NYCHRL.  Plaintiff asserts that, due to her pregnancy, she was unable to lift more than 45 pounds.  She also alleges that she was injured while transporting a cadaver, resulting in her inability to lift more than 25 pounds.  Am. Compl. ¶¶ 31, 33.

Plaintiff sought accommodations from Defendants on multiple occasions.  In particular, Plaintiff requested in December 2011 that she not be assigned to the morgue van, and in April 2012 that she not be required to lift more than 25 pounds.  Am. Compl. ¶¶ 29-30, 33.

Defendants did not accommodate her—instead, they continued to assign Plaintiff to the morgue van, and subsequently informed her that no "light duty" assignments were available. *Id.* ¶ 30, 34. Based on these allegations, Plaintiff's PDA and NYSHRL pregnancy discrimination claims are sufficient to survive a motion to dismiss.[6]

Defendants argue that Plaintiff's NYSHRL and NYCHRL disability claims fail because her requested accommodations—that she not be assigned to the morgue van or required to lift more than 25 pounds—would have prevented her from "perform[ing] the essential functions of her job." Mtn., at 15-16; *see Jackson*, 2014 U.S. Dist. LEXIS 167167, at *18. Yet Plaintiff received similar accommodations during her previous pregnancy in 2008. She also received virtually identical accommodations in June 2012.[7] *See* Am. Compl. ¶¶ 23, 39.

Defendants offer no explanation as to why Plaintiff's requested accommodations were reasonable in 2008 and in June 2012, but were not reasonable when Plaintiff requested them in December 2011 and April 2012. Instead, they argue that "plaintiff did not even require a reasonable accommodation to perform the essential functions of her job." Mtn., at 16. In support, Defendants cite *McKenzie v. Meridian Capital Group LLC*, in which the Court rejected plaintiff's claim that she required a reasonable accommodation—a special chair—to perform her duties, because plaintiff continued to work for three months after defendants removed the special

---

[6] Plaintiff does not specifically allege that Defendants accommodated other similarly situated employees by providing them with "light duty" assignments, a required element of a prima facie case for a PDA violation. *See Young*, 575 U.S. at ___. Notwithstanding, Plaintiff's claims are still sufficient to withstand a motion to dismiss. While Plaintiff has not fully established a prima facie case of discrimination, her Complaint contains "sufficient factual matter which, if true, gives Defendant[s] a fair notice of [her] claim and the grounds on which it rests." *Kassman*, 925 F. Supp. 2d at 461; *see Gratton v. JetBlue Airways*, 2005 U.S. Dist. LEXIS 10188, at *22-23 (S.D.N.Y. 2005).

[7] The Complaint does not describe Plaintiff's day-to-day job duties, but it appears that being assigned to the morgue van was not her only responsibility. *See* Am. Compl. ¶ 30 ("Kearney and Hawkins continued to assign Plaintiff to the morgue van *approximately two days per week*") (emphasis added). Since Plaintiff apparently had other duties in addition to driving the morgue van, it is plausible that Plaintiff was able to perform the essential functions of her job, even if she was unable to lift more than 25 pounds for a period of time. Indeed, the fact that Plaintiff was permitted to return to work on the condition that she not be required to lift over 25 pounds indicates that lifting over 25 pounds was not an "essential function" of Plaintiff's job. *See id.* ¶ 39.

chair. 2005 N.Y. Misc. LEXIS 1232, at *3-5 (N.Y. Sup. Ct. Mar. 24, 2005). Defendants assert

that Plaintiff's conduct was similar to that in *McKenzie*, because even after Plaintiff's request

that she not be assigned to the morgue van was rejected, she continued to drive the morgue van

twice per week. Mtn., at 16. Unlike the plaintiff in *McKenzie*, who "commenced a voluntary

leave of absence" unrelated to her alleged disability, however, Plaintiff was injured while

attempting to perform the very activity that she had requested a reasonable accommodation in

order to avoid. *See id.* at *4.

### B. Non-Pregnancy Gender Discrimination Claims

#### i.     Title VII, 42 U.S.C. § 1983, and NYSHRL

Plaintiff's gender discrimination claims based on the alleged derogatory remarks by

Davidson and Ortiz are dismissed. *See* Am. Compl. ¶¶ 24, 40-41. Verbal comments raise an

inference of discrimination, if there is a nexus between the comments and an adverse

employment decision. *See Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 518-19 (S.D.N.Y.

2004). In determining whether a comment "evidences an intent to discriminate or whether it is a

non-probative 'stray remark,'" courts consider four factors: "(1) who made the remark (i.e. a

decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in

relation to the employment decision at issue; (3) the content of the remark . . . ; and (4) the

context in which the remark was made (i.e. whether it was related to the decision-making

process)." *Id.*; *see Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149-50 (2d Cir. 2010).

Plaintiff claims that Ortiz was her supervisor at the time he made the derogatory

comments; however, Plaintiff does not allege any connection between Davidson's or Ortiz's

comments and Defendants' failure to accommodate Plaintiff's pregnancy. Indeed, Plaintiff

asserts that Hawkins and Kearney assigned her to the morgue van, even though they knew she

was pregnant. Am. Compl. ¶ 30, 34. She also asserts that "Defendants" denied her medical

insurance, and that Aaronson told her that no "light duty" assignments were available. *Id.* ¶¶ 32,

34. The Complaint is devoid of allegations connecting Davidson or Ortiz to any of those actions.

Nor does the timing of the remarks provide the required nexus. Davidson's comments

occurred in June 2009, more than two years before the first alleged adverse employment action

occurred. *Id.* ¶¶ 24, 30, 32. The Complaint does not specify when the comments were made by

Ortiz, but merely asserts that they were "habitual[]." *Id.* ¶¶ 40-41. *See Campbell v. Alliance

Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) ("Stray remarks by non-decision-makers or

by decision-makers unrelated to the decision process are rarely given great weight, particularly if

they were made temporally remote from the date of [the] decision.") (citations omitted).

### ii.   NYCHRL

"To establish a gender discrimination claim under the NYCHRL, the plaintiff need only

demonstrate 'by a preponderance of the evidence that she has been treated less well than other

employees because of her gender.'" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715

F.3d 102, 110 (2d Cir. 2013) (quoting *Williams v. N.Y.C. Housing Auth.*, 61 A.D.3d 62, 78 (1st

Dep't 2009)). The challenged conduct "need not even amount to something tangible, like hiring

or firing." *EEOC*, 967 F. Supp. 2d at 837. Although the NYCHRL "should not operate as a

general civility code," even a "single comment that objectifies women . . . made in circumstances

where that comment would, for example, signal views about the role of women in the workplace

[may] be actionable." *Mihalik*, 715 F.3d at 110-11 (citations omitted).

Under NYCHRL standards, Plaintiff's gender discrimination claims are sufficient to

withstand a motion to dismiss. Davidson's and Ortiz's alleged comments were derogatory

remarks that related specifically to Plaintiff's gender; Ortiz was also Plaintiff's supervisor at the

time he made the alleged comments. *See* Am. Compl. ¶¶ 24, 40-41. Accordingly, Plaintiff has

sufficiently alleged that she was "treated less well than other employees because of her gender."

*See Mihalik*, 715 F.3d at 110.

### C. Race and Color Discrimination Claims (Title VII, 42 U.S.C. §§ 1981 and 1983, NYSHRL, NYCHRL)

Plaintiff also asserts claims for race and color discrimination.[8] The Complaint alleges

that Plaintiff is Hispanic; but the only factual allegation that even touches upon race is that

Defendants "engage in a pattern and practice of discrimination against Hispanics and other

minority officers." Am. Compl. ¶ 22. The Complaint fails to even suggest that Plaintiff's

alleged disparate treatment was due to her race. Plaintiff's conclusory allegations fall far short of

the factual pleadings necessary to assert a claim of race or color discrimination under 42 U.S.C.

§§ 1981 and 1983, as well as the NYSHRL. *Cf. Acosta v. City of N.Y.*, 2012 U.S. Dist. LEXIS

60460, at *21-22 (S.D.N.Y. Apr. 26, 2012).

Plaintiff's claims are also insufficient to meet the more lenient standard of the NYCHRL,

because Plaintiff alleges no facts from which the Court could determine that she was treated

"less well" than other employees because of her race. *See Ortiz v. City of N.Y.*, 105 A.D.3d 674,

674 (1st Dep't 2013). Plaintiff's race and color discrimination claims are therefore dismissed.

### D. Retaliation Claims

#### i.    Title VII, 42 U.S.C. § 1983, NYSHRL

A prima facie claim for retaliation requires that: (1) that plaintiff was engaged in a

protected activity, (2) that defendants knew of the protected activity, (3) that defendants took

---

[8] Plaintiff has not exhausted her administrative remedies regarding the Title VII race and color discrimination claims, because she did not assert those claims in her CHR complaint. *See* Am. Compl. ¶ 16; Rodriguez Decl., Ex. B. *See Butts v. N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993). The Court will therefore consider only the race and color discrimination claims under 42 U.S.C. §§ 1981 and 1981, the NYSHRL, and the NYCHRL.

11

adverse employment actions against plaintiff, and (4) a causal connection between the protected

activity and the adverse action. *See Paulino v. N.Y. Printing Pressman's Union*, 301 Fed. Appx.

34, 37 (2d Cir. 2008) (Title VII, § 1981); *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 586-87

(S.D.N.Y. 2011) (§ 1983, NYSHRL).  Plaintiffs may demonstrate a causal connection "(a)

indirectly by showing that the protected activity was followed closely by discriminatory

treatment; (b) indirectly through other evidence such as disparate treatment of fellow employees

who engaged in similar conduct; or (c) directly through evidence of retaliatory animus." *Carr v.

WestLB Admin., Inc.*, 171 F. Supp. 2d 302, 309 (S.D.N.Y. 2001).

   The Complaint indicates only one instance of potentially protected activity—Plaintiff's

complaint to OCME's Human Resources Department that Davidson had called her a "dirty

bitch."[9]  Am. Compl. ¶¶ 24-26.  Plaintiff points to no evidence demonstrating a direct causal

connection between her Human Resources complaint and the alleged adverse employment

actions. *See Harper v. City of N.Y.*, 2011 U.S. Dist. LEXIS 86795, at \*23 (S.D.N.Y. Aug. 5,

2011).  Nor does the Complaint allege "disparate treatment of fellow employees who engaged in

similar conduct." *See Carr*, 171 F. Supp. 2d at 309.

   Plaintiff also fails to allege that her Human Resources complaint "was followed closely

by" an adverse employment action. *See id.* at 309-10.  Plaintiff complained to OCME's Human

Resources Department in mid-June 2009, more than two years before Defendants first rejected

her accommodation requests. Am. Compl. ¶¶ 26, 28, 32. *See Altieri v. Albany Pub. Library*, 172

Fed. Appx. 331, 333-34 (2d Cir. 2006) ("[W]here the complaint shows that the first alleged act

of retaliation occurred twenty-one months after plaintiff's protected activity, and where nothing

---

[9] While Plaintiff's complaint to the New York City Commission on Human Rights may constitute protected activity,
Plaintiff alleges no subsequent retaliatory conduct, save for the vague allegation that Defendants told her that the
"doctor's note" she provided regarding her neck injury was not "good enough." *See* Am. Compl. ¶¶ 16, 43.

in plaintiff's pleadings, even liberally construed, suggest[s] a plausible scenario of a causal

connection between two events occurring so far apart, plaintiff's retaliation complaint must be

dismissed."). Accordingly, Plaintiff's NYSHRL retaliation claim is dismissed.

### ii.   NYCHRL

To prevail on a retaliation claim under the NYCHRL, a plaintiff need only show that the

retaliatory act was "reasonably likely to deter a person from engaging in such action."

*Gorokhovsky v. N.Y.C. Housing Auth.*, 552 Fed. Appx. 100, 102 (2d Cir. 2014).  Based on the

length of time between Plaintiff's OCME Human Resources complaint and the first alleged

adverse action, as well as the lack of any other evidence indicating a causal connection between

the events, Plaintiff has failed to show that Defendants' conduct violated the NYCHRL.

Plaintiff's NYCHRL retaliation claim is therefore dismissed.

### E.   Hostile Work Environment Claim (Title VII)

A claim for hostile work environment under Title VII requires a showing: "(1) that

[plaintiff's] workplace was permeated with discriminatory intimidation that was sufficiently

severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis

exists for imputing the conduct that created the hostile environment to the employer." *See Van*

*Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996).  An environment is

considered hostile if "a reasonable person would have found it to be so" and if "the plaintiff

subjectively so perceived it." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir.

1999).  "A plaintiff must also demonstrate that she was subjected to the hostility because of her

membership in a protected class"; "[i]solated, minor acts or occasional episodes do not warrant

relief." *Id.*  In determining whether the environment is hostile, courts consider "the frequency of

the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Plaintiff alleges that Ortiz called her a "'bitch' as well as other derogatory and/or sexist names" on an unspecified number of occasions, and that he "habitually spoke to Plaintiff's co-workers about her personal life, including saying 'she's getting a divorce so go for it' and 'anybody can get her ass.'" Am. Compl. ¶ 40-41. The Complaint alleges that the statements were "habitual," but does not indicate even an approximate number of times that Ortiz made such statements, or the time period in which they occurred. Plaintiff has therefore failed to plead facts from which the Court could determine that Ortiz's comments were sufficiently frequent, severe, or pervasive to constitute a hostile work environment.[10] *See Van Zant*, 80 F.3d at 715. Accordingly, Plaintiff's hostile work environment claim under Title VII is dismissed.

## CONCLUSION

The Court DENIES Defendants' motion to dismiss the gender discrimination claims under Title VII, the NYSHRL, and the NYCHRL (Counts II, XII, and XVII); and the disability discrimination claims under the NYSHRL and NYCHRL (Counts XIV and XIX). The Court GRANTS Defendants' motion to dismiss the race and color discrimination claims under Title VII, 42 U.S.C. §§ 1981 and 1983, the NYSHRL, and the NYCHRL (Counts I, III, VI, VIII, X, XI, XIII, XVI, and XVIII); the retaliation claims under Title VII, 42 U.S.C. § 1983, the NYSHRL and NYCHRL (Counts IV, IX, XV, and XX); the hostile work environment claim under Title VII (Count V); and the gender discrimination claim under 42 U.S.C. § 1983 (Count VII).

---

[10] Moreover, Davidson's single alleged derogatory statement to Plaintiff in 2009 constitutes a "stray remark," and does support a hostile work environment claim. *See De La Cruz v. City of N.Y.*, 783 F. Supp. 2d 622, 644 (S.D.N.Y. 2011).

A status conference is scheduled for Wednesday, April 15, 2015, at 11:30 a.m.  The

parties are directed to file a civil case management plan at least two days prior to the conference.


Dated: New York, New York
      March 30, 2015

                        SO ORDERED

                        PAUL A. CROTTY
                        United States District Judge